AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*February 14, 2019*

David J. Bradley, Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Two story residence located at 9850 Pagewood Lane #301, Houston, Texas

Case No. **4:19mj0271**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Two story residence located at 9850 Pagewood Lane #301, Houston, Texas. See Attachment A

located in the ___Southern___ District of ___Texas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922 (g)(1) | Unlawful possession of a firearm or ammunition |

The application is based on these facts:
See Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*approved for JLC*
*AUSA*

Sworn to before me and signed in my presence.

Date: February 14, 2019

City and state: Houston, Texas

_____
Applicant's signature
Special Agent John Bray, FBI
*Printed name and title*

_____
Dena Palermo
*Judge's signature*
U.S. Magistrate Judge Dena Hanovice Palermo
*Printed name and title*

## Attachment A

1. The residential location to be searched is described as follows:

   9850 Pagewood Lane Unit #301, Houston Harris County, Texas 77042.

This is the address for the Westchase Forest Townhomes. The residence is more fully described as a two story brick and wood frame townhome located on the north side of the 9850 block of Pagewood Lane. The townhomes are constructed of tan bricks which contains several individual units. The unit 301 is the last unit on the north side of the townhomes in a series of unit numbers ranging from 301-307. The front door faces west with the unit number 301 located on a wood gated fence in front of the front entry door. In the rear of the unit is a two car garage overhead door, tan in color, that faces east with the unit number 301 located above the garage door.

1

Attachement A





2

Attachement A





3

Attachement A



Attachement A

## Attachment B

This warrant applies to information associated with the cellular phone 281-450-0605; electronic storage devices, and the residence located at 9850 Pagewood Lane #301, Houston, Texas, for firearms and ammunition related evidence.

### I. ITEMS TO BE SEIZED

Items to be seized are evidence, contraband, fruits or Instrumentalities of violations, on the described device in Attachment A, regarding 18 U.S.C. 922(g) Possession of Firearms and Ammunition by a Felon namely:

1. Records, documents and materials reflecting or relating to firearm/ammunition possession including, but not limited to, any correspondence, any electronic communications, email communications, invoices, receipts, bills, form of payment, etc.

2. Records, documents, and materials, including diaries, books, notebooks, notes, computer printouts, drawings, photographs, video recordings, and any other records, relating to ownership, with a firearm/ammunition.

3. Records, documents, and materials including diaries, books, notebooks, notes, drawings, photographs, video recordings, and any other records reflecting any possession, or intent to possess a firearm/ammunition.

4. Keys and passwords/passcodes belonging to and/or evidence of the existence of and usage of any lockers, safe deposit boxes, storage facilities, computer and electronic equipment or other property that could be used to conceal ownership of a firearm/ammunition.

5. Records or other items which show evidence of ownership or use of cellular phone including sales receipts, bills for internet access and hand written notes.

6. Weapons, instruments of violence, components used in the assembling of or necessary to operate a weapon, components related to subject offenses, and any items unlawfully intended to harm or could be used to unlawfully to harm as they relate to violations stated within.

7. Any digital device used to facilitate the above-listed violations and forensic copies thereof.

8. With respect to any digital device containing evidence falling within the scope of foregoing search categories, records, documents, programs, applications or material or evidence of the absence of the same, sufficient to show the actual user(s) of the digital device.

9. Any Social media pictures, videos, records, documents, and materials that relate to evidence to support his possession of a firearm/ammunition, or any other unlawfully possessed device.

10. As used herein, the terms "records", "documents", "programs", "applications" and "materials" include records, documents, programs, applications and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

11. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; digital cameras; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers,

2

Attachement B

mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, flash drives, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II.      SEARCH PROCEDURE FOR DIGITAL DEVICES

12. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

    a.  Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport tire device(s) to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 60 days from the date of execution of the warrant. If additional time is needed, the government may seek an extension of this period from the Court on or before the date by which the search was to have been completed.

    b.  The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

    c.  The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of

3

Attachement B

items to be seized. The search team may also search for and attempt to recover deleted, "hidden" or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

d. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

e. When searching a digital device pursuant to the specific protocols selected, the search teams shall make and retain notes regarding how the search was conducted pursuant to the selected protocols

f. If the search team, while searching a digital device encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband of evidence of a crime.

g. If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

h. If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

i. The government may retain a digital device itself, and/or entire forensic copies of it, until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest). After that period, the

4

Attachement B

    United States must obtain an order from the Court authorizing the continued retention of the device and/or forensic copies of it (or while an application for such an order is pending). Otherwise, the government must return the device and delete or destroy all forensic copies thereof.

  j. Notwithstanding the above, alter the completion of the search of the digital devices; the government shall not access digital data falling outside the scope of the items to be seized. Absent further order of the Court.

13. In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

  a. Any digital device capable of being used to commit, further or store evidence of the evidence(s) listed above;

  b. Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data ;

  c. Any magnetic, electronic, or optical storage device capable of storing digital date;

  d. Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

  e. Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communications with the digital device;

  f. Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device: and

5

Attachement B

    g.    Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

14. The special procedures relating to the digital devices found in the warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

6

Attachement B

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, John Bray, being duly sworn, declare under penalty of perjury and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and assigned to the FBI Houston Division, Joint Terrorism Task Force (JTTF) which is comprised of agents from the FBI, officers from the Houston Police Department (HPD), deputies from the Harris County Sheriff's Office (HCSO), and various federal law enforcement agencies. I have been a Special Agent with the FBI since June of 2010.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROPERTY OF BE SEARCHED

3. This affidavit is made pursuant to Rule 41 of the Federal Rules of Criminal Procedure, in support of an application for a warrant to search one premise, which is a residential home; a cellular phone; and all electronic storage devices. Based on the facts set forth in this affidavit, I believe that the residence of 9850 Pagewood Lane #301, Houston, Texas, and cellphone 281-450-0605, utilized by Joffre J. Cross, III, is being used in furtherance of 18 U.S.C. Section 922 (g), Possession of Firearms and Ammunition by a Felon.

4. The residential premises to be searched is located at: 9850 Pagewood Lane #301, Houston, Texas. This is the current residence of Joffre J. Cross, III and is further described in Appendix A. The FBI knows this is Joffre Cross, III's primary residence because surveillance performed by members of the Joint Terrorism Task Force (JTTF) have placed Joffre Cross, III at the residence after leaving his work address through evening hours. Joffre Cross, III's Texas

1

Affidavit

Drivers' License number 11914663 details the address of 9850 Pagewood Lane #301, Houston, Texas as his current address on November 26, 2015. Additionally, property records for 9850 Pagewood Lane #301, Houston, Texas provide Joffre J. Cross, II, and Elise P. Cross, the parents of Joffre Cross, III, as the current owners.

5. On July 21, 2016, SA John Bray telephonically contacted Joffre Cross, III at 281-450-0605 to arrange an interview. Additionally, 281-450-0605 is the cellular telephone number given by Joffre Cross, III to Athena Gun Club on March 10, 2018 as his contact number while filling out Athena Gun Club's Release, Assumption, and Indemnity Agreement form for range usage.

## PROBABLE CAUSE

6. On November 18, 2016, the FBI initiated an investigation on Joffre Cross, III based on his status as a convicted felon, and an allegation that Joffre Cross, III was stockpiling firearms and ammunition.

7. In 2007, Joffre Cross, III pled guilty in the Middle District of North Carolina on the following: Case number 1:07CR218-1: count one: distributed morphine sulfate; count two: distributed diazepam; count five: steal, purloin and convert to own use property of the United States Army; 1:07CR337-2: count one: distribution of 15 syringes containing morphine sulfate; count two: distribution of five syringes containing diazepam: count three: possession of firearm in furtherance of a drug trafficking crime; count four; theft of government property.

8. On December 3, 2018, Joffre Cross, III patronized Top Gun Range in Houston, Texas as evidenced by a receipt detailing a purchase which was provided by Top Gun Range. Joffre Cross, III purchased two boxes of FIOCCHI 7.62 ammunition utilizing Debit Card ending in 7006. Additionally, Joffre Cross, III paid for two range fees, one for himself and one for his wife, Brittany. The receipt indicated that Joffre Cross, III checked in a pistol.

9. On December 10, 2018, an interview was conducted with the President of Athena Gun Club. Agents provided him with a transaction number from Joffre Cross, III's financial statements in which Joffre Cross, III had patronized the facility. The agents received from the Athena Gun Club a receipt showing that Joffre Cross, III had paid a range fee on March 10, 2018. The receipt notes Joffre Cross, III brought his own hand gun to use. Athena Gun Club documents Joffre Cross, III as customer 146321 in their database which notes Texas Drivers' License number 11914663 associated with Joffre Cross, III. Additionally, Joffre Cross, III filled out a liability form stating he was not a convicted felon.

10. On November 13, 2018, an interview was conducted with the Director of Operations (DOO) at the American Shooting Center. Interviewing Agents provided the DOO transactions from Joffre Cross, III's financial statements that show he patronized American Shooting Center more than once. The DOO then provided interviewing agents receipts of Joffre Cross, III's purchases at American Shooting Center. The receipts detail multiple dates, to include July 30, 2017, when Joffre Cross, III used his Visa card ending in 4113 to pay a range fee and to pay for an extra firearm to use while at the range. Additionally, on December 28, 2018, Joffre Cross, III used his Visa card ending in 7006 to pay for a range fee. These purchases were previously linked to Joffre Cross's checking account. The DOO also provided Joffre Cross, III's electronic signature for his liability release to access the range. American Shooting Center does not rent firearms.

11. Raymond Eric Carrasco, owner of Spear Survival, was interviewed on November 28, 2018. During the interview, Raymond Carrasco stated that he is the sole owner of the company. A course he offers is called a Long Range Shoot Course. Customers pay via PayPal. Each

Customer needs to bring their own firearm(s) and ammunition, and there is no background checks conducted on potential candidates for the course other than a conversation.

12. Additionally, Raymond Carrasco stated he has a conversation with each potential participant of the Long Range Shoot Course, and attends each course. Raymond Carrasco telephone number 832-526-2821 and Joffre Cross, III's telephone number 281-450-0605 have had telephonic contact 534 times from November 10, 2016 through January 27, 2018, a 42 day period.

13. In financial subpoena returns from PayPal on September 5, 2017, Joffre Cross, III had two transactions with Spear Survival. One transaction on March 30, 2017 was for $525.00 and one transaction was on April 24, 2017 for $60.00. This is the approximate cost of the Long Range Shoot Course offered by Spear Survival.

14. On October 10, 2018, a Federal search warrant was issued on William Fears' cellular LG phone. Located on the LG phone was a video of a person, resembling in size and statue, of Joffre Cross, III, firing a rifle at what is believed to be American Shooting Center. The video, entitled Snapchat-1852982455.mp4 was stored on the LG cellular phone via data/Root/media/0/Snapchat-1852982455.mp4, accessed, and modified on July 31, 2017.

15. Pursuant to the search warrant executed on William Fears' phone on October 10, 2018, text messages seized on William Fears' phone provided conversation from Joffre Cross, III's phone number, 281-450-0605, to William Fears' phone number, 713-836-9689, discussing meeting at the range on July 30, 2017. In the Alachua County Sheriff's Office Arrest Report (AS055ARR00773W) dated October 20, 2017, William Fears gave the mobile phone number 713-836-9689 after being arrested for Attempted Homicide.

16. Additionally, pursuant to the search warrant executed on William Fears' phone on October 10, 2018, a message was sent from Joffre Cross, III's phone number 281-450-0605 to William Fears' phone number 713-836-9689 with a picture of a male's hand holding a firearm (resembling a glock with ghost ringed sights) that was sent on March 29, 2017. Attached to the picture was Meta Data 29.726472, -95.544312, document in a Latitude/Longitude format, which returned to the area of Joffre Cross, III's residence (9850 Pagewood Lane #301, Houston, Texas).

17. On January 20, 2017, a Confidential Human Source, currently closed, provided a screen shot of a conversation with Joffre Cross, III in which he states "I have a stainless glock 22 slide on a 23 size frame". Joffre Cross, III goes on to state "with Ghost ring sights".

18. A subpoena issued to Lone Wolf Distributors on July 28, 2017, detailed a purchase by Joffre Cross, III on May 14, 2016 of AmeriGlo Ghost Ring 3 Dot Night sights, along with a G22 Slide 40 S&W and a barrel M/22 40 S&W Stock Length. The receipts provided by Lone Wolf Distributors detail possible verification on how the parts were ordered. The bottom of the receipt states the following: Order Taker: WEB. The billing address and shipping address were both returned Joffre Cross, III's residence of 9850 Pagewood Lane #301, Houston, Texas. This purchase would support his ownership of the picture he sent to William Fears on March 29, 2017.

19. A subpoena served to Tactical Walls LLC on August 8, 2017, detailed a purchase made by Joffre Cross, III on February 26, 2015. The purchase was a 1450M Bundle, a full length concealment mirror for firearms. The billing information details Joffre Cross, III's telephone number 281-450-0605, and billing address of 9850 Pagewood Lane #301, Houston, Texas.

The item was shipped to Joffre Cross, III's former work address of Duron Systems, INC, 9110 Taub Road, Houston, Texas.

20. Affiant has conferred with an Interstate Nexus expert from ATF to confirm the effect of interstate and foreign commerce.

    a. As to the December 3, 2018, purchase of two boxes of FIOCCHI 7.62 ammunition, this ammunition is manufactured outside of the state of Texas and has moved in and effecting interstate and foreign commerce.

    b. With regard to the January 20, 2017 discussion of a Glock 23 frame, a Glock 23 is a firearm and is manufactured outside of the state of Texas and has moved in and effecting interstate and foreign commerce.

21. It is the Affiant's experience that individuals usually take their firearms and ammunition home and store them there. Based on the above mentioned details, affiant has reason to believe Joffre Cross, III is in possession of ammunition and/or firearms.

22. Based upon the investigation and facts described above, Affiant respectfully request the attached search warrant be issued for the residence of 9850 Pagewood Lane #301, Houston, Texas.

## COMPUTER DATA/CELL PHONE DATA

23. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure

or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a) The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b) Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

7

Affidavit

c) *Variety of forms of electronic media.* Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

### CONCLUSION

25. Based on the above, Affiant is requesting permission to search 9850 Pagewood Lane #301, Houston, Texas which is more particularly described in Attachment "A", in order to search and seize items described in Attachment "B".

Respectfully submitted,

_____
John Bray
Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED before me on this __14th__ day of February 2019, and I find probable cause.

_____
Dena Hanovice Palermo
U.S. Magistrate Judge
Southern District of Texas

8

Affidavit